ROANE, Judge,
dissented and delivered the following opinion.
These three cases come on for discussion together. They depend, entirely, upon the same principle, and form, as it were, but one case. There are no material variations between them. I shall apply my remarks more particularly to the first mentioned case; but they equally apply to' the others. The deed of trust referred to, and relied on in the appellee’s answer, forms a part of the proceedings, and is I understand, brought into all the records by consent of counsel.
In considering the first case, more particularly, I will say, it is a bill brought by the appellant Alcocke, against Mrs. Maulé, Campbell, West, and Bacchus. It states, that the appellant lent his name to Campbell, on two notes, for which he has never received any compensation, and in which he is entirely a surety : that in one of them, Campbell joined him as a drawer, and that this note is indorsed by West. In the other notes, Alcocke and West appear as the drawers, and Campbell as the indorser. The bill states, that in May 1818; a judgment was obtained on the first note against Alcocke and Campbell, and on the second against Alcocke only. It further 'states, that the appellee well knowing, that whatever might be the forms of these notes, Campbell was the real debtor, entered into a separate arrangement with him; gave him further time of credit, and took *from him a note, together with a deed of trust, upon a lot in Richmond to secure the payment. That the deed is dated 1st July 1818, is duly recorded, and respited the payment till February 1819; and that the time of payment was further extended until April 1819, at which time the lot was sold; and that all this was done without the knowledge or consent of the appellant. It also states, that the price obtained for the lot aforesaid, being insufficient to pay this and the other debts for which it was bound; which inadequacy arose as is averred, from the intermediate fall of real property, executions are now out against the appellant, for the balance. The object of the bill is, to enjoin those executions, on the ground of the new arrangement which was thus made between the principal and his creditor, the appellee, which it is contended wholly discharged the surety.
On the proofs of the cause, it unquestionably appears, that Campbell was the principal debtor, and Alcocke only a surety; and this was known to the appellee Mrs. Maulé, at least at the time of entering into the arrangement. It so appears from the testimony of Campbell, duly taken in the cause, and is corroborated by the answer of the appellee. I see no valid objection to Campbell’s deposition; but if it were even thrown out of the cause, I should deduce the same result from the answer. Although the first part of that answer in terms, denies a knowledge of the suretyship, yet that denial must be restricted to a point of time anterior to the date of the new arrangement. The deed of trust by which that arrangement was consummated, and which is made by the appellee a part of her answer, *930 shews, that at that time, at least, she must have known Campbell to be the real debtor. In addition to its being an entire anomaly, for a surety to bind his property to pay the debt of his principal, that deed recites, that Campbell is justly indebted to her in the sum secured by it, and that the appellee had agreed to suspend the executions, on his (Campbell’s,) *giving his note, and deed of trust, for the amount &c., paying the costs of suit, and commissions. These are indicia, and amount to admissions which clearly import, that Campbell was the real debtor; and they must control the broad denial on this subject, which is found in the first part of her answer. She did know at this time, that Campbell was the real debtor. He must either come to that conclusion, or wholly expel the deed of trust from the record; and this conclusion is also entirely confirmed by the evidence of Campbell.
Whatever may be the forms of the promissory notes, or the order in which the parties have signed them, and however all the makers and indorsers of them are to be considered as principals, in relation to their bona fide owners; any party, thereto, may shew himself to be a mere surety, in relation to the principal. This position which is sufficiently clear on general principles, is established by several decisions in this court. This may also be shewn as against the creditor himself, in relation to any contract, in which the creditor bore a part, which has changed the liability of the surety, and deprived him of his rights antecedently existing. As to such contract, the creditor appears in a new character, and is liable for the consequences of his own acts. In ascertaining this fact, it is of no account how the parties may have been considered, in this particular at any bank or elsewhere, as to the identical notes in question; and much less as to any antecedent notes evidencing the existence of the same debt. The enquiry is confined to the point of time at which the change was made; and is limited to the question, whether the party claiming the release was then in fact only a surety.
The appellee sensible of the truth of this position, and admitting the general effect resulting from a change of the contract to the injury of the surety, seeks to withdraw herself from its operation in the' case before us. She alleges in her answer, in the first part thereof, that *it was also understood and agreed, that the force of her judgment was not to be impaired by this new arrangement. Without stopping to inquire how far it is competent for her to set up this new matter in her answer, and by her own oath, that answer is a felo de se in this particular. The conversation she relies on to shew this, was held with the sergeant, and not with the principal debtor, Campbell; and if that officer could be considered as representing Campbell, in consequence of the overture made to him by Campbell, there is no such pretension in relation to the appellant. As to him, the sergeant had no pretence of authority to bind him. He was an entire stranger to the interest of the present ap- | pellant; and nothing done by this agent, or said -to him by the appellee, had the power to bind him: so that conversation with the sergeant was anterior to the date of the new arrangement. If before that conversation, it could have related to, or affected the appellant, that idea was explicitly abandoned in, and by the terms of that posterior agreement. The deed of trust which is in the record, and made a part of the answer, is full up 'to the point of abandoning such a pretension. It suspends the executions on the judgments; quoad all the defendants, the appellant included; which is entirely incompatible with the idea, that the appellant was not intended to be released. Nay, the deed of trust seems to have lost sight of even the judgments themselves, by stipulating, that in default of payment of the note given by Campbell, a sale of the lot should be made.
.It evidently appears therefore, that in this case, the appellant was a surety only; that this was known to the appellee, if not before (as is clearly proved by Campbell) at least at the time when the new agreement was consummated; and that that compact extended the time of payment in favour of the principal debtor. Such extension, changed the liability of the surety without his consent. It made him guaranty the solvency of his principal up *to a future and a distant day; insure against a fall in the value of his property; and opposed an impediment to his obtaining relief by means of a bill of quia timet. A prudent man may well undertake that another shall pay a debt by a short day, who might yet hesitate as to a distant one, on account of the risks of insolvency, &c. to which all men are liable.
It has been said or might be said, that the lot conveyed was inadequate to cover all the debts embraced thereby, and that Campbell’s object was to commit a fraud on the appellee in favor of his sureties. There is not a tittle of evidence in the cause to warrant either of these suggestions. Not admitting that the inadequacy of the fund substituted, can change the force of the principles which decide this case, the deficient price afterwards got for the lot in question, most probably arose from the intermediate fall in the value of town property: so, on the other hand it would be wrong to impute a fraud to Campbell in favour of his sureties, when he had a sufficient inducement to the arrangement in question, considered merely in relation to himself. By it, he obtained a further time to pay the money, and thus relieved his body and goods from an execution, in addition to the satisfaction he derived from relieving his sureties. The principles of equity which apply to and decide this case, were settled by the unanimous opinions of this court in the case of Croughton apd Duval. In that case it was unanimously admitted, that where a creditor agrees with his principal to stay execution or forbear the recovery of his debt, without the consent of the surety, whereby he may be injured and deprived of his remedy by a bill of quia timet, it* is considered as a new contract, and compromise with the principal, by which the surety is discharged. This *931 principle was again admitted and recognised by this court in the case of Ward v. Johnson (6 Mnn. 6) and is entirely and. emphatically decisive of the case before us.
*There is not a scintilla of difference, in point of principle, between these cases and the one before us. My opinion therefore is, to reverse the decrees and perpetually injoin the judgments. That however is not the opinion of the other two Judges. Their opinion is to affirm the said decrees and they are to be affirmed accordingly.